

# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
August 4, 2021 09:30 AM
     AFTAB PUREVAL
   Clerk of Courts
  Hamilton County, Ohio
 CONFIRMATION 1094943
```

**VANESSA BRACEY**  **A 2102666**

**vs.**
**LAKERIDGE ACRES NURSING**
**& REHABILITATION CENTER**
**LL**

## FILING TYPE: INITIAL FILING (IN COUNTY) WITH JURY DEMAND

## PAGES FILED: 9


VERIFY RECORD

EFR200

**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

| | | |
|---|---|---|
| VANESSA BRACEY<br>5622 Gardenhill Ln.<br>Cincinnati, OH 45232 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| LAKERIDGE ACRES NURSING &<br>REHABILITATION CENTER, LLC<br>7220 Pippin Rd.<br>Cincinnati, OH 45239 | ) ) ) ) ) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve also**:<br>Lakeridge Acres Nursing &<br>Rehabilitation Center, LLC<br>c/o Eric M. Simon (Stat. Agent)<br>200 Public Square, Suite 3500<br>Cleveland, OH 44114 | ) ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Vanessa Bracey, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES, JURISDICTION, & VENUE**

1. Bracey is a resident of the city of Cincinnati, Hamilton County, state of Ohio.

2. Defendant LAKERIDGE ACRES NURSING & REHABILITATION CENTER, LLC ("Lakeridge") is a foreign-incorporated company that conducts business throughout Ohio.

3. Lakeridge is, and was at all times hereinafter mentioned, Bracey's employer within the meaning of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C §2000e, the Americans with Disability Act ("ADA") 42 U.S.C. § 12101, R.C. §3721.24 et seq., and R.C. § 4112.01(A)(2).

4. The events that give rise to the claims for relief in this Complaint occurred at Lakeridge's location at 7220 Pippin Rd., Cincinnati, OH 45239.

## JURISDICTION & VENUE

5. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

6. Within 300 days of the conduct alleged below, Bracey filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. (473-2021-01223)) against Defendant ("EEOC Charge").

7. That EEOC Charge is currently pending before the EEOC, and Bracey intends to amend her complaint to include claims for discrimination and retaliation under Title VII, the ADA, and R.C. § 4112 et seq.

8. All the material events alleged in this Complaint occurred in Hamilton County, Ohio.

9. Therefore, personal jurisdiction is proper over Lakeridge pursuant to R.C. §2307.382(A)(1), (2), (3) and/or (4).

10. Venue is proper pursuant to Civ. R. 3(C)(1), (2), (3) and/or (6).

## FACTS

11. Bracey is a former employee of Lakeridge.

12. At all times noted herein, Bracey was fully qualified for and could fully perform the essential functions of her job.

13. Bracey worked for Lakeridge as a CNA from June 20, 2020 until Lakeridge unlawfully terminated Bracey's employment on or about February 19, 2021.

14. Bracey is African American and has had a knee replacement, placing her in protected classes for her race and disability, respectively.

15. Bracey gave notice of both protected classes to Lakeridge early on in her employment.

16. Bracey originally came to Lakeridge after an interview with Latoya (LNU, then-scheduler, African American) and Ginger Rutherford (HR director, Caucasian).

17. Bracey was then hired as a CNA, but made sure to inform Lakeridge that she had already completed nearly all of her classroom and clinical hours required for her STNA license – she was only missing the test itself for that licensure.

18. On or about December 30, 2020, Bracey made a written report to Lakeridge's CEO (Shawn LNU, Caucasian) about a potential issue with patient abuse – she saw the resident in room 125 (a total care patient) had numerous bruises on his face and hips.

19. Bracey also noticed that she was being treated disparately worse than her Caucasian and able-bodied coworkers, so reported this as well (a protected complaint of discrimination).

20. The first-shift nurse had also heavily medicated the patient.

21. Bracey had come to the patient's room, met with Cassie Taylor (CNA, Caucasian) and Jeanette Spinell (STNA, African American), went to change him but noticed he was not wearing adult briefs, then noticed the medication.

22. The patient was nearly in a coma and had not eaten in quite some time – he was in his early 30s, but weighed only around 125 lbs.

23. Bracey then reported the same (also in writing – constituting a whistleblowing complaint) to Patty Musslin (Director of Nursing ("DoN"), Caucasian), who thanked her for her report.

24. Bracey and Musslin then discussed further, and Bracey noted that even a sternum rub did not fully awaken the patient.

25. Shortly after this report, Sheena (LNU, LPN, African American) and Danielle (LNU, STNA, African American), two of the night-shift coworkers with whom Bracey had had previous issues, came to the patient's room.

26. Immediately when Sheena (LNU) and Danielle (LNU) entered the room, they became hostile with Bracey. Janet Finell (STNA) also witnessed this event and intervened.

27. Sheena (LNU) demanded to know why Bracey had reported the patient's black eye up the ladder and not to her (rather than the CEO and DoN).

28. Bracey disagreed that she should have reported the issue to Sheena (LNU) as she was not in any way Bracey's superior.

29. There was further verbal altercation between them, and after investigation it was found that the patient was indeed over-medicated. This had caused the bruising via an overdose of the meds.

30. Going forward, Bracey's coworkers and Lakeridge generally treated her worse, seemingly due to her protected whistleblowing complaints regarding the patient's abuse and neglect.

31. Bracey's negative treatment for her race and disability worsened as time went on as well.

32. On or about February 8, 2021, Bracey sent a letter to Lakeridge again detailing what she reasonably viewed as patient abuse and neglect at the facility. This too was a protected whistleblowing report.

33. This next report came after further discussions with Musslin and Donald Adell (DoN, Caucasian) about the aforementioned patient abuse and neglect (and other patient abuse and neglect issues she saw at Lakeridge, which were again reported both verbally and in writing, thus constituting them as additional protected whistleblowing reports),

34. Bracey had been forced to make this additional report after Adell had threatened her job for having pictures of the neglect and abuse she had continuously reported prior.

35. On or about February 12, 2021, only a few days after the threats from Adell and Bracey's additional whistleblower complaint, she was called to a meeting with Adell, Musslin, and another woman who Bracey did not recognize, from corporate.

36. They mentioned they were concerned about Bracey's report, and questioned if she had reported things verbally before (she had to Adell and to others) and proved the same after showing text messages she had sent regarding the issues.

37. The next day, Bracey spoke with the Ohio Department of Health to continue her whistleblowing to the outside agency.

38. Bracey also reported other neglect and abuse issues, such as nurses grinding medications for the patients and feeding it to them without the patients' consent or knowledge.

39. A few days later, the Department of Health sent out a surveyor to investigate.

40. On or about February 15, 2021, Bracey was suspended from Lakeridge because of "complaints" against her.

41. Bracey was not aware of any such complaints, and questioned Musslin about them.

42. Bracey requested a document specifying why she had been suspended, but Lakeridge refused to provide it.

43. A few days later, on or about February 19, 2021, Bracey's employment was terminated by phone call citing that she was not certified as an STNA, despite that she was not hired as one (but rather as a CNA).

44. Defendant's termination of Bracey was an adverse employment action against her.

45. Defendant's purported reason for Bracey's termination is pretextual.

46. Defendant actually terminated Bracey's employment discriminatorily against her race and disabilities, and retaliatorily against her protected discrimination and whistleblower complaints.

47. As a result of Defendant's acts and omissions above, Bracey has suffered damages.

## COUNT I: VIOLATION OF OHIO WHISTLEBLOWER STATUTES
### R.C. § 4113.52 and/or R.C. § 3721.24

48. Bracey restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

49. As set forth above, Bracey repeatedly made oral and written reports to Lakeridge about the unethical, unlawful, negligent with respect to patient care, and/or policy-violating behavior that was going on there.

50. Bracey repeatedly and consistently reported to Defendant what she reasonably believed to be unethical and/or illegal conduct in the workplace in violation of the law and company policies.

51. In the alternative, Bracey reasonably believed she was reporting unethical and/or illegal behavior, in violation of the law and company policies, that constituted criminal acts that threatened the public's health or safety.

52. Bracey verbally complained to Defendant regarding this conduct.

53. Bracey complained to Defendant in writing regarding this conduct.

54. Bracey gave Defendant an opportunity to cure the reported misconduct.

55. Defendant then retaliated against Bracey for her reports by terminating her employment.

56. Defendant's termination of Bracey was an adverse employment action against her.

57. Defendant's purported reason for Bracey's termination was pretextual.

58. Defendant actually terminated Bracey's employment in retaliation against her complaints of patient negligence.

59. Defendant retaliated against Bracey by, among other things, terminating her employment based on her complaints regarding this conduct.

60. Defendant's termination of Bracey's employment and other retaliatory actions were in violation of R.C. § 4113.52 and/or R.C. § 3721.24.

61. As a direct and proximate result of Defendant's conduct, Bracey suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Bracey demands from Defendant the following:

a) Issue a permanent injunction:

    i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

    ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge her personnel file of all negative documentation;

c) An award against Defendant for compensatory and monetary damages to compensate Bracey for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Bracey's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

  /s/ Matthew Bruce
Matthew G. Bruce (0083769)
     Trial Attorney
Evan R. McFarland (0096953)
Brianna R. Carden (0097961)
**THE SPITZ LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, Ohio 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff Vanessa Bracey*

## JURY DEMAND

Plaintiff Vanessa Bracey demands a trial by jury by the maximum number of jurors permitted.

                                                    /s/ Matthew G. Bruce
                                                    Matthew Bruce (0083769)